IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIDWEST INSTITUTE OF HEALTH,
PLLC, d/b/a GRAND HEALTH PARTNERS,
WELLSTON MEDICAL CENTER, PLLC,
PRIMARY HEALTH SERVICES, PC, and
JEFFERY GULICK,

           Plaintiffs,

vs.

GRETCHEN WHITMER, in her official
capacity as Governor of the State of Michigan,
DANA NESSEL, in her official capacity as
Attorney General of the State of Michigan,
and ROBERT GORDON, in his official
capacity as Director of the Michigan
Department of Health and Human Services,

           Defendants.

Case No. 1:20-cv-00414

Hon. Paul L. Maloney

**PLAINTIFFS' BRIEF REGARDING CERTIFICATION OF STATE-LAW ISSUES TO THE MICHIGAN SUPREME COURT**

James R. Peterson (P43102)
Stephen J. van Stempvoort (P79828)
Amy E. Murphy (P82369)
MILLER JOHNSON
Co-counsel for Plaintiffs
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, Michigan 49503
(616) 831-1700
petersonj@millerjohnson.com
vanstempvoorts@millerjohnson.com
murphya@millerjohnson.com


Patrick J. Wright (P54052)
Mackinac Center Legal Foundation
140 W Main St.
Midland, Michigan 48640-5156
Co-counsel for Plaintiffs
(989) 631-0900
wright@mackinac.org

Ann M. Sherman (P67762)
Deputy Solicitor General
Rebecca Berels (P81977)
Assistant Attorney General
Attorneys for Defendant Nessel
Michigan Dep't of Attorney General
P.O. Box 30212
Lansing, MI  48909
(517) 335-7628
shermana@michigan.gov
berelsr1@michigan.gov

Christopher M. Allen
Joshua O. Booth
John G. Fedynsky
Joseph T. Froehlich
Assistant Attorneys General for
Defendants Witmer and Gordon
P.O. Box 30754
Lansing, MI  48909
(517) 335-7573
Allenc28@michigan.gov
Buthj2@michigan.gov
fedynsky@michigan.gov
Froehlichj1@michigan.gov

**Introduction**

The Defendants have repeatedly asked this Court to permit the Michigan state courts to resolve the state-law issues that this Court proposes to certify to the Michigan Supreme Court. Although permanently abstaining from deciding the state-court issues would not be appropriate, the Plaintiffs agree that it would be appropriate to certify these issues to the Michigan Supreme Court in order to permit the state courts an opportunity to rule on them in the first instance. In the event that the Supreme Court does not accept the certified questions, then this Court will be able to resolve the state-law issues on the merits, having given the state courts an opportunity to rule on them.

**Argument**

Local Civil Rule 83.1 authorizes this Court to certify an issue for decision to the Michigan Supreme Court. The local rule provides that the order of certification shall be accompanied by written findings that: (a) the issue certified is an unsettled issue of state law; (b) the issue certified will likely affect the outcome of the federal suit; and (c) certification of the issue will not cause undue delay or prejudice. *Id*. The order of certification must also include citation to authority authorizing the state court involved to resolve certified questions. *Id*. Finally, in cases certified to the Michigan Supreme Court, this Court must also approve a statement of facts to be transmitted to the Michigan Supreme Court by the parties as an appendix to the briefs that the parties will file in the Michigan Supreme Court. *Id*. Each of these requirements is or can be met here.

**I.    The Michigan Supreme Court has authority to accept certified questions.**

First, it is abundantly clear that the Michigan Supreme Court has the authority to accept certified questions from this Court. *See* MCR 7.308(A)(2)(a). *See also, e.g.*, *In re Certified Question from U.S. Dist. Court for W. Mich.*, 825 N.W.2d 566, 572–73 (Mich. 2012) (Young, C.J.,

1

dissenting) ("I continue to believe that this Court lacks the constitutional authority to issue advisory opinions other than as described in article 3, § 8 of Michigan's 1963 Constitution. My position regarding the Court's constitutional authority did not prevail, and I accept that the Court has determined otherwise.").

## II.    The Court's proposed questions are unsettled issues of state law.

This Court proposes to certify two questions of state law to the Michigan Supreme Court. (Order, DE 23, PageID.1092). The Defendants agree that these state-law issues are unsettled issues that the Michigan courts have not definitively resolved. In fact, the Defendants have repeatedly asked this Court to abstain from deciding these questions, arguing that these issues are "best left to the Michigan courts." (Governor's Motion to Dismiss, DE 24-2, PageID.1131; *see also* AG's Motion to Dismiss, DE 27, PageID.1399-1400).

Although formal invocation of an abstention doctrine is not necessary in this case, the Plaintiffs agree that it would be appropriate under the circumstances to provide the state courts an opportunity to resolve these issues in the first instance through certifying the question to the Michigan Supreme Court. Specifically, the Plaintiffs agree with both of the Court's proposed questions, with a slight edit to Question No. 1, as reflected in bold type below:

1. Whether, under the Emergency Powers of the Governor Act, MCL § 10.31, et seq., or the Emergency Management Act, MCL § 30.401, et seq., Governor Whitmer has the authority **after April 30, 2020** to issue or renew any executive orders **related to the COVID-19 pandemic**.

2. Whether the Emergency Powers of the Governor Act and/or the Emergency Management Act violates the Separation of Powers and/or the Non-Delegation Clauses of the Michigan Constitution.

The fact that similar issues are currently percolating in the Michigan appellate courts does not obviate the need for certification. First, on June 4, 2020, the Michigan Supreme

Court denied applications for leave to bypass the Michigan Court of Appeals and appeal directly to the Supreme Court in two cases challenging the Governor's orders on state-law grounds, *House of Representatives v. Whitmer*, Michigan Supreme Court Docket No. 161377 (**Exhibit 1**, Order Denying Bypass), and *Martinko v. Whitmer*, Michigan Supreme Court Docket No. 16133 (**Exhibit 2**, Order Denying Bypass). Thus, the Michigan courts are not close to resolution of this issue.

Second, in the cases that are pending in the Michigan courts, the Defendants are actively urging the Michigan state courts to avoid ruling on the merits of the claims, arguing either that the plaintiffs lack standing or that their claims are moot. For example, in *House of Representatives v. Whitmer*, the Governor filed an answer and a cross-bypass application in which her lead argument was that the Legislature lacks standing to challenge her conduct under the Emergency Powers of the Governor Act ("EPGA") and the Emergency Management Act ("EMA"). (**Exhibit 3**, Answer, at 13-19). If the Governor prevails on her standing argument in *House of Representatives v. Whitmer*, then the Michigan courts will never reach the merits of the state-law issues that are raised in that case. This is eminently possible. In fact, Justice Clement's concurrence in the denial of the Legislature's bypass application expresses concern that "the theory by which the Legislature asserts standing to bring this suit in the first place is entirely novel in Michigan." (**Exhibit 1**, Order at 5 (Clement, J., concurring)).

Similarly, in *Martinko v. Whitmer*, the Governor filed an answer asserting that (1) the plaintiffs' claims were all moot, because Governor Whitmer rescinded the particular executive orders that they challenged, and (2) the plaintiffs did not have standing to assert that the Governor's executive orders violate Michigan non-delegation principles because those arguments were never raised in the trial court. (**Exhibit 4**, Answer, at 11-12, 28-29). As indicated, the Michigan Supreme Court agreed with the Governor and denied the bypass application. (**Exhibit 2**).

In short, the Defendants are actively arguing in those other cases that the Michigan courts should not address the merits of the state-law claims that this Court proposes to certify to the Michigan Supreme Court. Even if the Michigan Legislature's lawsuit makes its way back to the Michigan Supreme Court, it is very possible that the Michigan courts will deny the Legislature's challenge to the Governor's executive orders for lack of standing without reaching the merits of the state constitutional issues. Certifying those questions to the Supreme Court in this case will provide the Supreme Court the opportunity to reach the merits of those issues, in the event that the Legislature's lawsuit is determined to be procedurally defective.

Given the Defendants' position that the state-law claims should be resolved in the state courts, certifying the questions to the Supreme Court provides the state courts with the most ready opportunity to do what the Defendants wish.

### III. The certified issues will affect the outcome of the Plaintiffs' claims.

There is no real dispute that the certified issues will affect the Plaintiffs' claims for declaratory relief on Counts One and Two of their complaint. If the Michigan Supreme Court finds that the Governor may not exert her emergency powers under the EPGA or the EMA to issue COVID-19 related executive orders after April 30, 2020, then the Plaintiffs will be entitled to judgment in their favor on Counts One and Two.

Defendants have previously argued—and presumably will argue again—that the Plaintiffs' claims are moot. As the Plaintiffs have already explained, that is not true.

First, the Governor continues to issue new executive orders, invoking her authority under the EPGA and the EMA and imposing new requirements on the Plaintiffs. As of the date of this filing, medical providers like Grand Health Partners, Wellston Medical Center, and Primary Health Services (collectively, the "Providers") are permitted to provide non-essential medical treatment, but may only do so consistent with Executive Order 2020-97. That executive order

4

requires that the Providers comply with a host of new sanitation and workflow requirements. (EO 2020-97, DE 21-1, PageID.1073-1074). Outpatient healthcare facilities like the facilities operated by the Providers must comply with no fewer than 17 additional sanitation requirements that are specific to medical treatment facilities. (*Id.*, PageID.1082-1083).

The Governor specifically invoked her powers under the EPGA and the EMA in order to issue Executive Order 2020-97. (*Id.*, PageID.1072-1073). If the Governor may not properly invoke her powers under the EPGA or the EMA, then Executive Order 2020-97 is invalid and may not be applied to the Plaintiffs. The Governor continues to assert her authority under the EMA and the EPGA to issue executive orders that proscribe certain aspects of the Plaintiffs' conduct; the Plaintiffs continue to claim that the Governor may no longer issue orders under the EMA and the EPGA related to the COVID-19 pandemic and that the orders that apply to them are not enforceable. Given these circumstances, it is not evident why the Defendants continue to argue that this case is moot. It unmistakably is not.

Second, as Plaintiffs previously explained in greater detail (Reply, DE 21, PageID.1049-1052), Governor Whitmer's rescission of her prior executive orders that specifically precluded the Plaintiffs from providing or receiving any non-essential medical treatment whatsoever is merely a voluntary cessation that does not moot the case, because it is eminently capable of reversal and repetition. "[I]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768-69 (6th Cir. 2019). That is clearly the case here.

Justice Clement made a similar point when explaining her vote to deny the Michigan Legislature's bypass application: "Until a vaccine for COVID-19 is invented, our society

5

will be living with the risk of the spread of this disease and the argued necessity of emergency measures to mitigate that spread. There is little prospect of these disputes being rendered moot . . ." (**Exhibit 1**, Order at 5 (Clement, J., concurring)). The Defendants' argument that the Plaintiffs' claims are moot is not a valid reason to oppose certification to the Michigan Supreme Court of the state-law questions that this Court has proposed.

### IV.    Certification will not cause undue delay or prejudice.

The Plaintiffs have an interest in speedy resolution of this matter. Nevertheless, given the relatively streamlined process for briefing certified questions before the Michigan Supreme Court, *see* MCR 7.308(A)(3), the Plaintiffs have not identified any undue delay or prejudice that would be occasioned by certifying the Court's proposed questions to the Michigan Supreme Court.

### V.    The relevant facts are undisputed.

Both Local Civil Rule 83.1 and MCR 7.308(A)(2)(b)(ii) require a statement of facts to be submitted to the Michigan Supreme Court. The facts relevant to the Court's proposed questions are undisputed.

The Plaintiffs propose that, for purposes of certifying questions to the Michigan Supreme Court, the statement of facts should include the facts as recounted in the following Paragraphs of the Verified Complaint: 19 through 25, and 29 through 80. (Complaint, DE 1, PageID.1-21). The Plaintiffs also propose including these additional relevant facts:

1.  During a press conference on May 1, 2020, Governor Whitmer admitted that it was no longer necessary to prohibit non-essential medical procedures. Governor Whitmer stated, "We are encouraging anyone who has been holding off on surgery that really needs to be done, to get that scheduled and to proceed. Early on, it was really necessary because we had so few N95 masks, and gloves, and all of the important things that we needed to keep people safe as we were dealing with this influx of COVID-19 patients, so that we could use all of that PPE. Now, we've been able to build up enough that we can proceed with these other procedures, and we are

        encouraging hospital systems to move forward with that. . . . [A]s for oncology surgeries, as for knee surgeries, those are things that should be scheduled and we're encouraging people to get that done."

2. On June 1, 2020, Governor Whitmer issued Executive Order 2020-110 ("EO 2020-110"), asserting her authority under both the EPGA and the EMA and imposing various requirements on individuals and businesses in light of the COVID-19 pandemic.

3. Paragraph 3 of EO 2020-110 provides, "Any business or operation that requires its employees to leave their home or place of residence for work is subject to the rules on workplace safeguards in Executive Order 2020-97 or any order that may follow from it."

4. Governor Whitmer issued Executive Order 2020-97 ("EO 2020-97") on May 21, 2020, asserting her authority under both the EPGA and the EMA.

5. Paragraph 1 of EO 2020-97 requires all businesses with in-person workers to comply with several specific workplace sanitation and safety protocols, as outlined in the order, including social distancing measures, personal protective equipment protocols, and employee screening protocols.

6. Paragraph 9 of EO 2020-97 requires outpatient healthcare facilities and other medical providers to comply with additional industry-specific sanitation and safety protocols, including specific waiting room procedures, limitations on the number of patient appointments, and enhanced telehealth and telemedicine procedures.

7. Grand Health Partners, Wellston Medical Center, and Primary Health Services (collectively, the "Providers") operate outpatient healthcare facilities and medical offices and are required to comply with EO 2020-110 and EO 2020-97.

In the event that additional input on or stipulations regarding the statement of facts would be useful to the Court, the Plaintiffs would welcome the opportunity to discuss with the Court the appropriate contours of the statement of facts.

## Conclusion

The Plaintiffs agree that it would be appropriate to certify the following questions to the Michigan Supreme Court:

1. Whether, under the Emergency Powers of the Governor Act, MCL § 10.31, et seq., or the Emergency Management Act, MCL § 30.401, et seq., Governor Whitmer has the authority

7

        after April 30, 2020 to issue or renew any executive orders related to the COVID-19 pandemic.

2. Whether the Emergency Powers of the Governor Act and/or the Emergency Management Act violates the Separation of Powers and/or the Non-Delegation Clauses of the Michigan Constitution.

        MILLER JOHNSON
        Attorneys for Plaintiffs

Dated: June 5, 2020        By /s/ James R. Peterson
        James R. Peterson (P43102)
        Stephen J. van Stempvoort (P79828)
        Amy E. Murphy (P82369)
        45 Ottawa Avenue SW, Suite 1100
        Grand Rapids, Michigan 49503
        (616) 831-1700
        petersonj@millerjohnson.com
        vanstempvoorts@millerjohnson.com
        murphya@millerjohnson.com

        Patrick J. Wright (P54052)
        Mackinac Center Legal Foundation
        140 W Main St.
        Midland, Michigan 48640-5156
        (989) 631-0900
        wright@mackinac.org